IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 19, 2017

## STATE OF TENNESSEE v. MARQUIS DEVANN CHURCHWELL

Appeal from the Criminal Court for Davidson County
Nos. 2015-D-2352, 2016-A-353, 2016-I-572      Mark J. Fishburn, Judge

_____

### No. M2016-02218-CCA-R3-CD

_____

Defendant, Marquis Devann Churchwell, pled guilty to one count of robbery and two counts of assault with the sentence to be determined by the trial court. After a sentencing hearing, the trial court imposed a total effective sentence of eight years, eleven months and twenty-nine days. On appeal, Defendant argues that the trial court abused its discretion by imposing a sentence of confinement. Upon our review, we affirm the judgments of the trial court. However, we remand the case for entry of judgment forms for each count of the indictment in case number 2015-D-2352.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Nicholas McGregor, Nashville, Tennessee, for the appellant, Marquis Devann Churchwell.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Glenn R. Funk, District Attorney General; and Janice Norman, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Factual and Procedural Background*

This appeal concerns the sentences imposed on Defendant in three separate cases. On October 23, 2015, Defendant was indicted along with four codefendants[1] for two counts of aggravated kidnapping and one count of robbery for acts committed against the victim, Adrian Brown. While incarcerated on these charges, Defendant committed two separate assaults against Officers Consondra Wright and Marcus McGee. On July 6, 2016, Defendant entered a guilty plea to one count of robbery and two counts of assault[2] with the sentence to be determined by the trial court at a later sentencing hearing; the two counts of aggravated kidnapping were dismissed.[3]

According to the State's summary of the factual bases for Defendant's pleas, the robbery of Mr. Brown occurred on July 14, 2015. On that date, officers responded to a call of a male with no clothing. The responding officers discovered the victim "unclothed and with multiple facial wounds." The victim was transported to the hospital for treatment of his "fairly extensive" injuries. The victim reported that he had stayed the night with several individuals who he identified by nicknames, including Defendant who was also known as "Throw It Off." The victim had offered to pay one of the codefendants $50 in gas money to take him to cash a check. When the victim could not cash his check, one of the codefendants told him that "he had one choice to either come willingly [back to the apartment], come forcibly or be killed. The victim felt threatened and got back into [the codefendant's] truck." Defendant took the victim's check and struck him in the head. Back at the apartment, "the victim was slapped several times and told to go onto Craigslist and to sell himself for money." The victim was commanded to "come out of his pocket." This resulted in the victim's relinquishing all of his belongings to the group, including his wallet, his phone charger, his phone, and his identification. The victim was "punched, kicked and struck with the knees by all of the members of the group." The victim was then forced to lie in the bed of the truck and was driven to the area where he was eventually discovered by the police. There, Defendant "held a knife on [the victim] while he was told to strip off all of his clothing." The group then drove

---

[1] The codefendants were Wayne Michael Robertson; John Ellis Welch a.k.a. John Ellis Welch, Jr.; Mark Anthony Seagraves, Jr.; and Walter Aaron Morris. A fifth codefendant, Stephanie Ann Allen, was charged in the same indictment with aggravated assault of the victim.

[2] The charge of assault against Officer McGee was still pending in general sessions court at the time Defendant entered his plea on July 6, 2016. The plea petition indicates that Defendant would "plead open" to that charge but that the sentence "will be concurrent to" the charge of assault against Officer Wright. Defendant officially pled to the charge of assault against Officer McGee during the sentencing hearing on August 30, 2016.

[3] The record does not include a judgment form for the aggravated kidnapping charges. Instead, the "Special Conditions" box on the judgment form for the robbery conviction states "Dismiss Counts 1 & 2." On remand, the trial court should enter judgment forms reflecting the disposition of Counts 1 and 2 of indictment number 2015-D-2352. *See State v. Davidson*, 509 S.W.3d 156, 217 (Tenn. 2016) (requiring a trial court to prepare a uniform judgment document for each count of the indictment).

off, leaving the victim on the street. During the investigation, officers conducted a search of the apartment with the consent of one of the codefendants. Inside, they found several of the victim's belongings. Defendant and other codefendants were positively identified by the victim from photographic lineups, "and multiple defendants made admissions to detectives throughout the investigation."

With regard to the charge of assault against Officer Wright, the facts at trial would have shown that on December 28, 2015, Defendant was incarcerated at the Davidson County Sheriff's Department. Officer Wright was an employee at the jail. Defendant "grabbed [Officer Wright] from behind, pulled her hair and dumped a bottle filled with urine and feces on her face. The fluids got into the officer's eyes and ran[] down her back." The incident was captured on surveillance video. "At some point the [D]efendant claimed he was HIV positive, even though there were no records to corroborate that." Officer Wright was transported to the hospital for treatment. The record on appeal does not contain a summary of the factual basis for the charge of assault against Officer McGee, though the indictment indicates that it was committed on May 21, 2016.

With regard to Defendant's mental health, Defendant informed the trial court during the plea colloquy that he had schizophrenia, bipolar disorder, and post-traumatic stress disorder. Defendant indicated that he heard voices but that he was not hearing any at the time he entered his plea. Defendant reported that had not been receiving his medications while in the jail. Specifically, Defendant indicated that the personnel at the jail "refuse[d]" to give him his medications while he was "in the hole for . . . almost nine months" or "in the safe room over 30 times . . . . when I do anything stupid." Defendant told the trial court that he knew why he was in court, knew what he was doing, and did not know of any reason that he "would not be able to fully understand and appreciate" what he was doing.

During the August 30, 2016 sentencing hearing, Defendant's presentence report was entered into evidence. The report indicated that the 25-year-old Defendant had dropped out of school in the ninth grade. Defendant had two prior convictions for aggravated burglary as well as multiple misdemeanor convictions for theft under $500, harassment, and criminal trespass. Defendant had multiple probation violations and revocations, including having a diversionary sentence revoked in Rutherford County. Prior to being incarcerated, Defendant was homeless and unemployed, receiving disability benefits as his sole income. Defendant admitted that his mental health was "very poor," and he had thought about committing suicide.

From what we can gather from Defendant's untested, rambling, and fairly incoherent statement of allocution, Defendant described his troubled childhood, including physical abuse, neglect, and stints of homelessness. Defendant reported that he had "over probably 30" contacts with juvenile court. He admitted that he started fires and stole

food from stores. Defendant stated that he "was falsely blamed for touching my sisters" and spent time at Hermitage Hall with other sexual offenders, which "messed [his] head up." Defendant stated that he had mental health issues since he was thirteen years old. Defendant had been diagnosed with schizophrenia, bipolar disorder, and post-traumatic stress disorder and "took over 30 medications," but he had not received any medications while in jail. Defendant stated that at the time of the robbery offense, he was hearing voices and was using illegal drugs like marijuana and heroin because he had been refused treatment at the Mental Health Co-op. Defendant stated that if released, he would be able to stay at Room in the Inn and that he would seek treatment from Middle Tennessee Mental Health Institute. Defendant seemed to express remorse and a hope for forgiveness from the victim.

At the continuation of the sentencing hearing on October 27, 2016, the prosecutor informed the trial court that she had been notified of an incident at the jail wherein Defendant had threatened an officer. The State then presented the testimony of Brandi Jimerson, a case officer with the Dual Disorders Services ("DDS") program through Community Corrections, a program that treats defendants who have both mental health and drug abuse issues. Ms. Jimerson knew that Defendant had been treated in the past for hearing voices and that his jail records indicated that he reported psychosis and hearing voices that gave him homicidal and suicidal ideations. Ms. Jimerson testified that Defendant was on Community Corrections in 2012 and was evaluated for the DDS program at that time. Over the course of approximately one year, Defendant had several violations, including behavioral issues and absconding. His sentence was ultimately placed into effect in April 2013. For the present sentencing hearing, Ms. Jimerson did not conduct a new evaluation of Defendant but "just tried to see if we could come up with an appropriate plan for him." Defense counsel reported to Ms. Jimerson that Defendant had been accepted into the Room in the Inn program, but Ms. Jimerson believed that "to be successful, [Defendant] would need to kind of be out of Nashville a little bit where he could not get around as easily." Ms. Jimerson had someone from "E and C Housing" speak to Defendant "to see about possibly taking him into Grandpa's House," but he was denied for that program. Defendant was also not allowed to return to the Mental Health Co-op for services because the robbery incident occurred in their parking lot. On cross-examination, Ms. Jimerson agreed that Defendant should be able to get his medication through Centerstone if he were released.

As mitigating factors, defense counsel submitted that Defendant played a minor role in the robbery offense and that he was acting under duress. *See* T.C.A. § 40-35-113(4), (12). According to defense counsel, Defendant was not involved from the "inception" of the offense and "was not the person who took this victim to steal the money," but instead "he came in in the middle." Defense counsel did not deny Defendant's involvement, stating, "when the opportunity was there for him to commit a crime, he did." Defense counsel disputed the State's proposed enhancement factor that

- 4 -

Defendant was a leader in the commission of the offense. *See* T.C.A. § 40-35-114(2). As far as duress, defense counsel argued that "perhaps [Defendant] was not under duress or domination from his codefendants" but that he was acting under "duress or domination from his condition of not being able to control his emotions." Defense counsel urged the trial court to consider rehabilitation and treatment due to Defendant's mental health issues. *See* T.C.A. § 40-35-103(5). Defense counsel asked the trial court to impose an alternative sentence.

The parties agreed that Defendant was a Range II offender for the felony robbery conviction. The trial court found as an enhancement factor that Defendant had a previous history of convictions and criminal behavior in addition to that necessary to establish his range. *See* T.C.A. § 40-35-114(1). The trial court found, "but not with great significance," that Defendant allowed the victim to be treated with exceptional cruelty during the commission of "a very bizarre robbery." *See* T.C.A. § 40-35-114(5). The trial court found that while Defendant may not have initiated the incident, he did place a knife at the victim's throat and participated in beating the victim with "kind of a gang-type mentality, group mentality." The victim was then stripped of all of his clothes and left naked in the street, suffering "great humiliation and emotional problems, and he was already being treated for mental health illness at the Co-op of which these parties were all pretty much knowledgeable about." Additionally, the trial court found that Defendant possessed a deadly weapon during the commission of the offense and that Defendant had no hesitation about committing a crime in which the risk to human life was high. *See* T.C.A. § 40-35-114(9), (10). The court found that none of the mitigating factors suggested by defense counsel applied.

The trial court acknowledged that Defendant had "serious and persistent mental illness" but noted that Defendant was unable to successfully complete the DDS program through Community Corrections. The court did not "know how a more appropriate structure could be put into place to address his mental health issues than he had when he was in the DDS program." The court noted that the presentence report indicated that Defendant had very little family or community support. The court found that Defendant's "mental health issues would make it extremely difficult for him to successfully complete an alternative sentence." Defendant had also violated other alternative sentences in Davidson and Robertson Counties and rejected treatment programs offered to him. The trial court noted that the assault charges indicated that Defendant "cannot even avoid criminal behavior while in custody of a correctional facility."

The trial court sentenced Defendant to eight years for the robbery conviction and eleven months and twenty nine days for each of the assault convictions. The sentences for the assault convictions were run concurrently to each other but consecutively to the sentence for the robbery conviction. The trial court determined that alternative

sentencing was not appropriate in Defendant's case and that confinement was necessary to avoid depreciating the seriousness of the offense, to protect society from a defendant with a long history of criminal conduct, and because less restrictive measures had not been successful in the past. *See* T.C.A. § 40-35-103(1)(A)-(C). Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant argues that the trial court abused its discretion in ordering Defendant to serve his sentence in incarceration given Defendant's serious mental health issues. Defendant submits that the sentence imposed is unjust because "[t]he record establishes that [D]efendant will not receive proper mental health treatment in prison." According to Defendant, "[t]his is analogous to a mechanic sending a car to the junk yard when he knows it needs an oil change." The State responds that the trial court did not abuse its discretion in sentencing Defendant to confinement.

The standard of review for questions related to probation or any other alternative sentence, including Community Corrections, is an abuse of discretion with a presumption of reasonableness for within-range sentences reflecting a decision based upon the principles and purposes of sentencing. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *State v. Bise*, 380 S.W.3d 682, 709-10 (Tenn. 2012). Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. *See State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. T.C.A. § 40-35-401, Sent'g Comm'n Cmts.; *see also State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Tennessee Code Annotated section 40-35-102(3)(C) provides that "[p]unishment shall be imposed to prevent crime and promote respect for the law by . . . [e]ncouraging effective rehabilitation of those defendants, where reasonably feasible, by promoting the use of alternative sentencing and correctional programs that elicit voluntary cooperation of defendants[.]" A trial court should consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant" when "determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). However, the following considerations may justify a sentence of confinement:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1). In any case, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

Although "probation shall be automatically considered by the court as a sentencing alternative for eligible defendants," the defendant bears the burden of "establishing suitability" for probation. T.C.A. § 40-35-303(b). "This burden includes demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)). A defendant is eligible for probation if the sentence imposed is ten years or less. T.C.A. § 40-35-303(a). Though Defendant in this case received a total effective sentence of less than ten years, he was sentenced as a Range II, multiple offender and, thus, was not a favorable candidate for a probation. *See* T.C.A. § 40-35-102(6)(A).

Defendants who meet certain "minimum criteria" but would otherwise be subject to incarceration may be eligible for Community Corrections. *See* T.C.A. § 40-36-106(a). In this case, Defendant was not eligible under this provision because he was convicted of the felony offense of robbery, a crime against the person. *See* T.C.A. § 40-36-106(a)(B); 39-13-401. Even where a defendant does not meet the criteria under Tennessee Code Annotated section 40-36-106(a), he may nevertheless "be considered eligible for punishment in the community under this chapter" if the defendant "would be usually considered unfit for probation due to histories of chronic alcohol or drug abuse or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution." T.C.A. § 40-36-106(c).

In this case, the trial court applied a within-range sentence after considering all of the appropriate principles of sentencing; thus, we shall apply a presumption of reasonableness to the trial court's decision. Moreover, the evidence in the record fully supports the trial court's findings with regard to Defendant's mental health issues and the previous failed efforts at treatment and rehabilitation. While Defendant testified that he was not receiving his medications at the local jail, there was no evidence presented that treatment of Defendant's mental health issues "could be served best in the community rather than in a correctional institution." *State v. Boston*, 938 S.W.2d 435, 439 (Tenn.

Crim. App. 1996); T.C.A. § 40-36-106(c). Ms. Jimerson testified that Defendant needed a more structured environment than would be available to him living in a homeless shelter; however, Defendant had not complied with the strictures of the DDS program during his prior stint on Community Corrections. The fact that Defendant had prior probation and Community Corrections sentences revoked alone would support the imposition of a sentence of confinement. *See* T.C.A. § 40-35-103(1)(C). Additionally, Defendant's criminal record and the seriousness of the offense also support a sentence of confinement. *See id.* at (A), (B). The trial court did not abuse its discretion in ordering Defendant to serve his sentence of eight years, eleven months and twenty-nine days in confinement. Defendant is not entitled to relief.

*Conclusion*

Based on the foregoing, we affirm the judgments of the trial court. However, we remand the case for entry of judgment forms for each count of the indictment in case number 2015-D-2352.

_____
TIMOTHY L. EASTER, JUDGE